IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BALSIE BUTLER, III | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CASE NO. 2:22-CV-531-WKW |
| | ) | [WO] |
| | ) | |
| LM GENERAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

LM General Insurance Company (Liberty) removed this case from state court on diversity of citizenship grounds pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Before the court is Balsie Butler, III's motion to remand.  (Doc. # 15.)  For the reasons discussed below, Mr. Butler's motion will be granted.

## I.  STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting [federal] jurisdiction."  *Kokkonen*, 511 U.S. at 377 (citations omitted).  "Because

removal jurisdiction raises significant federalism concerns, federal courts are . . . to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

## II.  BACKGROUND

Mr. Butler alleges that on March 6, 2020, while "driving in a safe and proper manner," he was involved in a car accident with Ronnequia Jackson when Ms. Jackson collided with Mr. Butler's vehicle.  (Doc. # 1-1 at 22.)[1]  That collision "severely damaged [his] vehicle and caused [him] to sustain severe bodily injuries." (Doc. # 1-1 at 22.)  At the time of the collision, Mr. Butler alleges that he had an insurance policy with Liberty that included uninsured/underinsured motorist (UIM) coverage.  (Doc. # 1-1 at 22–23.)

But, according to Mr. Butler, Liberty did not pay him the UIM coverage he was due.  So, he sued Liberty on two counts in the Circuit Court of Montgomery County, Alabama.  First, Mr. Butler brought a UIM claim against Liberty.  (Doc. # 1-1 at 22–23.)  Second, Mr. Butler brought a bad faith claim against Liberty for its failure to pay a "reasonable value for [his]" UIM claim.  (Doc. # 1-1 at 23–24.)  For both claims, Mr. Butler sought "all compensatory damages and punitive damages."

---

[1] All citations use the pagination as designated by the CM/ECF filing system.

(Doc. # 1-1 at 22–24.)[2]  But, in his amended complaint filed in state court, Mr. Butler did not seek a specific amount of monetary damages.

On September 9, 2022, Liberty removed Mr. Butler's case from the Circuit Court of Montgomery County, Alabama, to this court.  (Doc. # 1 at 1.)  On October 7, 2022, Mr. Butler filed a motion to remand the case to the Circuit Court of Montgomery County.  (Doc. # 15.)  Liberty responded (Doc. # 23), and Mr. Butler replied (Doc. # 25).

## III. DISCUSSION

A defendant in a state court action may remove that action to the federal district court "embracing the place where" the state action "is pending" if the action satisfies the requirements of diversity jurisdiction.  28 U.S.C. §§ 1332(a), 1441(a).  For there to be diversity jurisdiction, the parties must be completely diverse (*i.e.*, "citizens of different states"), and the amount in controversy must exceed $75,000, "exclusive of interest and costs."  28 U.S.C. § 1332(a).  There is no dispute that the parties are completely diverse.  (*See* Doc. # 15 at 2 ("Plaintiff . . . concedes that complete diversity exists[.]").)  However, the parties disagree about whether the amount in controversy requirement has been met.

---

[2]  Mr. Butler also brings these claims, and seeks the same relief, against fictitious defendants.  (Doc. # 1-1 at 24.)  However, "[i]n determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names [is] disregarded."  28 U.S.C. § 1441(b)(1).  So, the court does not analyze Mr. Butler's claims against these fictitious defendants further.

When a defendant removes an action to federal court based on diversity jurisdiction and "the plaintiff has not alleged a specific amount of damages [in his state court complaint], the defendant . . . must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); 28 U.S.C. § 1446(c)(2). To determine whether a defendant has met his burden, "a court considers both the complaint and other evidence introduced by the defendant." *Carruthers v. Variety Wholesalers, Inc.*, 631 F. Supp. 3d 1173, 1176 (M.D. Ala. 2022).[3] Evidence can include a defendant's "own affidavits, declarations, or other documentation." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010). "A court may [also] rely on . . . reasonable inferences and deductions drawn from [the defendant's] evidence[] to determine whether the defendant has carried [his] burden." *S. Fla. Wellness, Inc.*, 745 F.3d at 1315. "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (quoting *Pretka*, 608 F.3d at 751).

Here, Mr. Butler did not allege a specific amount of monetary relief in his amended complaint. So, Liberty seeks to establish, by a preponderance of the

---

[3] A court does this "[w]hen a defendant removes a case within thirty days [of receiving] the initial complaint." *Carruthers*, 631 F. Supp. 3d at 1176 (citing *Sullins v. Moreland*, 511 F. Supp. 3d 1220, 1223–24 (M.D. Ala. 2021)). There is no dispute that Liberty removed this action within that thirty-day time frame.

evidence, that Mr. Butler's claims exceed the $75,000 jurisdictional threshold.  (Doc. # 1 at 3–5.)  Liberty argues that "the combined value of" Mr. Butler's "demand for UIM benefits . . . and his demand for an unspecified amount of punitive damages undoubtedly" exceeds $75,000.  (Doc. # 1 at 5.)

### 1. *Demand for UIM Coverage*

Liberty argues that "based on the damages sought by [Mr. Butler] for UIM coverage alone, the amount in controversy is satisfied."  (Doc. # 1 at 5.)  Liberty's confidence is misplaced.  As evidence of the damages sought, Liberty attached the Declaration of Samantha Jones to its notice of removal.  (Doc. # 1-2.)  Ms. Jones is the "Senior Claims Resolution Specialist II for Liberty."  (Doc. # 1-2 at 2.)  Ms. Jones was "assigned to the claim submitted by [Mr. Butler] seeking" UIM "motorist coverage."  (Doc. # 1-2 at 3.)  According to Ms. Jones, "During the course of the claim, on or about March 15, 2021, [Mr. Butler], through his attorney, made a demand for $300,000 [in] UIM coverage."  (Doc. # 1-2 at 3.)  The policy limit for UIM coverage for bodily injury was $300,000.  (Doc. # 1-2 at 8.)[4]

"A court can consider a pre-suit settlement offer as evidence of the value of the case at the time of removal." *Davis v. Ray*, No. 2:19-CV-932-WKW, 2020 WL 1916170, at *2 (M.D. Ala. Apr. 20, 2020).  "While [a] settlement offer, by itself,

---

[4] Mr. Butler has submitted a letter from his attorney dated March 15, 2021, which makes a "formal demand for policy limits to resolve this matter."  (Doc. # 25-1 at 2.)  Mr. Butler's submission does not include any documentation to support the demand.  (Doc. # 25-1 at 2.)

may not be determinative, it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). "In determining what that 'something' is, courts draw distinctions between settlement offers steeped in puffery and posturing at a high level of abstraction, on the one hand, and those yielding particularized information and a reasonable assessment of value, on the other." *Davis*, 2020 WL 1916170, at *2 (quoting *Montreuil as Next Friend of Z.M. v. Costco Wholesale Corp.*, No. 2:18-CV-706-MHT, 2020 WL 1243383, at *1 (M.D. Ala. Mar. 13, 2020)); *see also Carruthers*, 631 F. Supp. 3d at 1177 (noting that "[a] court may credit a demand letter that provides details of a plaintiff's legal theory, injuries, and requested relief more than a generic demand riddled with puffery and generalizations").

"A settlement demand adds monetary weight to the amount in controversy 'when it provides enough specific information to support the plaintiff's claim for damages to indicate that the offer is a reasonable assessment of the value of the plaintiff's claim.'" *Davis*, 2020 WL 1916170, at *2 (quoting *Simpson v. Primerica Life Ins., Co.*, No. 2:15-CV-777-WKW, 2015 WL 9315658, at *9 (M.D. Ala. Dec. 3, 2015), *report and recommendation adopted*, 2:15-CV-777-WKW, 2015 WL 9413876 (M.D. Ala. Dec. 22, 2015)). For example, the court in *Reeves v. Waffle House, Inc.*, found that the settlement demand letter tipped "the preponderance-of-the-evidence scales in Waffle House's favor" because "it [was] a comprehensive and

particularized letter that [included] pages of detailed information, including medical records and bills, concerning Reeves's injuries and damages." No. 1:22-CV-356-RAH, 2022 WL 4391498, at *2 (M.D. Ala. Sept. 22, 2022). "It [was] far from the type of boilerplate and puffery-based settlement demand letters that have been condemned by courts as providing little-to-no detail or information concerning the amount in controversy." *Id.*

"Based on the[se] . . . principles," Mr. Butler's settlement demand "does not tip the preponderance-of-the-evidence scales in [Liberty's] favor." *Davis*, 2020 WL 1916170, at *3. All Ms. Jones says is that Mr. Butler's attorneys made a demand for $300,000 in UIM coverage—nothing more. (Doc. # 1-2 at 3.) Mr. Butler's demand does not explain why he chose $300,000 or how he arrived at this calculation. *See Davis*, 2020 WL 1916170, at *3. Because of the absence of any "factual information" regarding Mr. Butler's demand, "the . . . demand is more akin to puffery than to a reasonable valuation of [his] case." *Id.* So, Mr. Butler's demand for UIM coverage does not support a finding that the amount in controversy is greater than $75,000.

In her declaration, Ms. Jones also states that Mr. Butler "has . . . claimed to have over $128,000 in medical bills that . . . are covered under his [p]olicy" with Liberty. (Doc. # 1-2 at 3.) Liberty argues that this is evidence that the amount-in-controversy requirement has been met. (*See* Doc. # 1 at 5; Doc. # 23 at 5.) But Ms.

Jones's statement lacks the detail needed to demonstrate that $128,000 was at issue when the case was removed. *Cf. Reyes v. Stockhill*, 568 F. Supp. 3d 1288, 1291 (M.D. Fla. 2021) (finding that the amount in controversy included "$52,430.56 in past medical expenses" because the removing defendant had "provide[d] [the] [p]laintiff's medical records, along with an itemized list that details the location of her treatment and the associated costs"); *see Reeves*, 2022 WL 4391498, at *2. Liberty's argument also ignores other evidence in the record: Ms. Jones's admission that Mr. Butler "has only submitted medical bills for $57,488.07 despite repeated requests from Liberty's claims department" and that some of the "medical bills" Mr. Butler "submitted . . . appear potentially unrelated to the [a]ccident." (Doc. # 17-1 at 3.) Liberty has failed to show, by a preponderance of the evidence, that Mr. Butler's claimed medical expenses satisfy the amount-in-controversy requirement.

### 2. *Demand for Punitive Damages*

Liberty asserts that Mr. Butler's "demand for punitive damages is, of course, included in the determination of the amount in controversy." (Doc. # 1 at 5.) Again, Liberty's confidence is misplaced. It is true that "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) (citations omitted); *see also Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*,

320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining [the] jurisdictional amount."). It is also true that, under Alabama law, Mr. Butler could recover punitive damages if he prevailed on his bad faith failure to pay claim. *See Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 923–25 (Ala. 1981).

But here "the request for punitive damages does not demonstrate, either singularly or in combination with the [amended] complaint's vague allegations, that the amount in controversy exceeds $75,000." *Davis*, 2020 WL 1916170, at *3. "The court cannot assess the value of [Mr. Butler's] punitive damages request in a factual vacuum." *Id.* at *4. Mr. Butler's "demand [for UIM coverage] . . . does not mention . . . potential[ly] . . . recover[ing] . . . punitive damages or refer to [Liberty's] alleged wrongful conduct." *Id.*; (*see* Doc. # 1-2 at 3; Doc. # 25-1 at 2.) And "the [amended] complaint does not contain any non-conclusory allegations describing [Liberty's wrongful] behavior." *Id.* Merely pointing to the fact that Mr. Butler demands punitive damages (*see* Doc. # 1 at 5)—without more—"begs the question of what those punitive damages are likely to be." *Moore v. CNA Found.*, 472 F. Supp. 2d 1327, 1332 (M.D. Ala. 2007). And that is "a question that [Liberty] bears the burden of answering." *Id.*; *Davis*, 2020 WL 1916170, at *4. Liberty has not answered that question, and "the court cannot estimate the value of [Mr. Butler's] punitive damages

request without engaging in speculation." *Davis*, 2020 WL 1916170, at *4.  Such fact-free "speculation . . . is impermissible." *Pretka*, 608 F.3d at 753–54.

## IV. CONCLUSION

Based on the foregoing, Liberty has failed to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Accordingly, it is ORDERED as follows:

(1)     Plaintiff's motion to remand (Doc. # 15) is GRANTED;

(2)     This action is REMANDED to the Circuit Court of Montgomery County, Alabama; and

(3)     The Clerk of the Court is DIRECTED to take all steps necessary to effectuate the remand.

DONE this 8th day of August, 2023.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE